UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK MITCHELL,

    Plaintiff,

v.

Case No. 23-cv-10472
Hon. Matthew F. Leitman

MADISON DISTRICT
PUBLIC SCHOOLS,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**

In this action, Plaintiff Jack Mitchell alleges that his employer, Madison District Public Schools ("Madison"), retaliated against him in violation of the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2611 *et seq.*, for taking medical leave. (*See* Compl., ECF No. 1.) Madison has now moved for summary judgment on Mitchell's claim. (*See* Mot. for Summ. J., ECF No. 25.) For the reasons explained below, Madison's motion is **GRANTED**.

**I**

The parties included a detailed recitation of the relevant factual background in their respective briefs. (*See id.*; *see also* Resp., ECF No. 26.) The Court sets forth below only those facts that are relevant to a determination of Madison's motion.

1

**A**

Mitchell worked as a bus driver for Madison from 2017 until February of 2020. (*See* Pl.'s Dep. at 8:8-10, ECF No. 25-2, PageID.145.) Sometime in January of 2020, Mitchell requested and was granted FMLA leave for a medical procedure.[1] (*See id.* at 14:11-17:4, PageID.147-148.) His leave was effective on January 27, 2020, and he returned to work on February 11, 2020. (*See id.* at 52:7-10, 52:19-24, PageID.156.)

Also in January of 2020, Mitchell was subject to multiple complaints against him. First, on January 16, 2020, high school principal Leslie Renne-Kegebein submitted a formal complaint against Mitchell to Madison's Transportation Department accusing Mitchell of leaving the school early before all students could board his bus. (*See* 1/16/2020 Letter of Complaint, ECF No. 25-5, PageID.183.) That complaint stated:

> On Wednesday, January 8, 2020, we had a student go out to board the bus several minutes before 3:00 and the bus had already departed. The student came to the office and the secretary, Val, called you to request the driver to return. It was communicated to us, by you, that the driver (Jack [Mitchell]) refused to return for the student.

(*Id.*)

---

[1] Neither party knows the date of this request nor appears to have paperwork reflecting this request, but the parties do not dispute that Madison granted Mitchell FMLA leave.

2

One week later, on January 23, 2020, multiple complaints were lodged against Mitchell for his poor treatment of students and his "unsafe" driving. (*See* 1/23/2020 Sarah Provenzola-West Email, ECF No. 25-6, PageID.185.) That same day, Renne-Kegebein submitted a second formal complaint to the Transportation Department in which she again said that Mitchell had left early and left students behind:

> For the second time in 2 weeks, some of our Pontiac students have been left behind by the Pontiac bus. The bus is scheduled to stay in the MHS lot until 3:00. It is not to depart before that due to students being able to plan on that departure time.
>
> Today we had several students go out to board the bus several (3-4 min.) before 3:00 and the bus had already left. When the bus driver was asked to return, by you, he refused. This is the second time Jack [Mitchell] has refused to return to pick up our students.

(1/23/2020 Letter of Complaint, ECF No. 25-7, PageID.187.)[2]

On February 25, 2020, two weeks after returning from his FMLA leave, Mitchell was terminated. (*See* Pl.'s Dep. at 76:20-21, ECF No. 25-2, PageID.162.)

---

[2] Mitchell did not inform Provenzola-West or Renne-Kegebein of his FMLA leave, (*see* Pl.'s Resp. to Def.'s Interrog. No. 10, ECF No. 25-3, PageID.176), and there is no evidence that either was aware that Mitchell requested or took FMLA leave. (*See id.*; *see also* Pl.'s Dep. at 64:1-5, ECF No. 25-2, PageID.159.) Indeed, Provenzola-West stated in a sworn declaration that she was not aware of Mitchell's leave. (*See* Provenzola-West Decl. at ¶ 10, ECF No. 25-10, PageID.193.) The only person Mitchell recalls speaking with regarding his FMLA leave was Sandy Munufo, Madison's Human Resources Director. (*See* Pl.'s Dep. at 14:1-16:12, ECF No. 25-2, PageID.147; Pl.'s Resp. to Def.'s Interrog. No. 10, ECF No. 25-3, PageID.176.)

**B**

On February 24, 2023, Mitchell filed this action against Madison. (*See* Compl., ECF No. 1.) Mitchell's Complaint asserts a single claim for FMLA retaliation. (*See id.*, PageID.3-4.)

On July 15, 2024, Madison filed a motion for summary judgment. (*See* Mot. for Summ. J., ECF No. 25.) The Court concludes that it may resolve the motion without oral argument. *See* Local Rule 7.1(f)(2).

**II**

Madison seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### III

"A plaintiff can prove his FMLA retaliation claim using either direct or indirect evidence." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432 (6th Cir. 2014). "Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Mitchell seeks to proceed under both the direct and indirect evidence routes. The Court will address each in turn.

### A

The Court begins with Mitchell's claim that he has direct evidence that Madison retaliated against him for exercising his rights under the FMLA. The Court concludes that he does not have such evidence.

Direct evidence is evidence that, "if believed, *requires* the conclusion that unlawful retaliation was at least a motivating factor in the employer's actions." *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 408 (6th Cir. 2012) (cleaned up) (emphasis in original) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). "No inferences are required; the illegal animus is 'explicitly expressed.'" *Id.* (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)). Direct evidence of retaliation in this case would be, for example, "an explicit statement from [Madison] that it was

5

firing [Mitchell] in response to" his exercise of his FMLA rights. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). *See also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 648 (6th Cir. 2015) (finding direct evidence of retaliation where supervisor "specifically referenced [plaintiff's] protected statements as examples of insubordination.").

Mitchell cites as direct evidence of retaliation that when he returned from FMLA leave, he was "confronted by [Madison] with false accusations of insubordination and 'leaving students behind,' which [he] vehemently denies." (Resp., ECF No. 26, PageID.213.)  That is not direct evidence of retaliation.  The allegedly false allegations against Mitchell did not contain any explicit expression of unlawful anti-FMLA animus. *See Laws*, 508 F. App'x at 408.  Moreover, the allegedly false allegations support Mitchel's claim of retaliation only if one makes the inference that, due to the closeness in time between the allegations and Mitchell's termination, they must have been a pretext for Madison's true intent to fire Mitchell because he took FMLA leave.  Because the evidence only inferentially supports Mitchell's claim of retaliation, it is not direct evidence of FMLA retaliation.

Accordingly, Mitchell must proceed, if at all, under the *McDonnell Douglas* test that applies when a plaintiff relies on indirect evidence of retaliation.

6

**B**

The Court now turns to whether Mitchell's indirect evidence of retaliation is sufficient to withstand summary judgment under the *McDonnell Douglas* burden-shifting-framework. Under that framework, Mitchell bears the initial burden of establishing a *prima facie* case of retaliation. *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). To do so, he "must show (1) that [he] engaged in a protected activity; (2) that [Madison] had knowledge of [his] protected conduct; (3) that [Madison] took an adverse employment action towards [him]; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If Mitchell satisfies his *prima facie* case, "the burden shifts to [Madison] to offer evidence of a legitimate, [non-retaliatory] reason for the adverse employment action." *Bryson*, 498 F.3d at 570. "If [Madison] succeeds, the burden shifts back to [Mitchell] to show that [Madison's] proffered reason is a pretext for unlawful [retaliation]." *Id.*

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to

7

motivate the employer's action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). These categories are "a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Id.* At this stage, Mitchell must "adduce[] evidence which would enable a factfinder to conclude that [Madison's] stated reason for terminating [him] is not the true reason and is simply a pretext for unlawful retaliation." *Bryson*, 498 F.3d at 572.

The Court may skip directly to the pretext level of the *McDonnell Douglas* test, *see Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009), and does so here. Mitchell relies on the "no basis in fact" option for proving pretext. (*See* Resp., ECF No. 26, PageID.209, 213.) He claims that he did not leave students behind at school. He insists that he instead "adhered to the policy and did not leave early." (*See id.* at PageID.209.)

Even assuming, *arguendo*, that Mitchell is correct and thus that the proffered reason for his termination was untrue, Madison is entitled to summary judgment on pretext based on the honest-belief rule. That rule provides that "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007)).

8

Madison submitted evidence that it honestly believed that Mitchell had violated district policies and procedures.  It presented proof that it had received complaints from several different students regarding Mitchell leaving early, and it submitted a declaration from the Principal of Madison Elementary School who declared, under oath, that she "believed [the reports] were credible" because they "came from multiple different students of different ages, at different times, and the reports were so similar[.]" (Provenzola-West Decl. at ¶ 7, ECF No. 25-10.)  Moreover, the reports of Mitchell leaving early appear to be consistent with video footage that Madison reviewed of Mitchell leaving early in the months before the January complaints. (*See* 11/6/2019 Renne-Kegebein Email, ECF No. 25-4, PageID.181.)  Thus, Madison has shown that it "reasonably and honestly" relied on "particularized facts" supporting its belief that Mitchell left early in violation of its policies. *See Chen*, 580 F.3d at 401.

"To overcome the employer's invocation of the honest belief rule, the employee 'must allege more than a dispute over the facts upon which the discharge was based. He must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action.'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)).  Mitchell has not cited any evidence to suggest that Madison did not honestly believe

9

in the reason for his termination. Indeed, Mitchell did not even respond to this argument. (*See* Resp., ECF No. 26.) Any argument against the honest belief rule is therefore forfeited. *See Adkins v. Marathon Petroleum Co., LP*, 105 F.4th 841 (6th Cir. 2024) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments." (quoting *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022))). For all of these reasons, Mitchell has failed to overcome Madison's invocation of the honest belief rule.

Accordingly, Madison is entitled to summary judgment on Mitchell's retaliation claim.

## IV

For all of the reasons stated above, Madison's motion for summary judgment (ECF No. 25) is **GRANTED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 25, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan<br>
Case Manager<br>
(313) 234-5126